**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

TERRELL PERKINS,                     )
                                     )
            Petitioner,              )
v.                                   )     Case No. 1:20-cv-00235-SEP
                                     )
BILL STANGE,                         )
                                     )
            Respondent.              )

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Petitioner Terrell Perkins's Petition for a Writ of Habeas Corpus

under 28 U.S.C. § 2254.  Doc. [1].  For the reasons set forth below, the Petition is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is an inmate at the Southeast Correctional Center in Charleston, Missouri.  On

direct appeal, the Missouri Court of Appeals summarized the facts of his case as follows:

> Defendant and Jolice Trice (Victim) dated until July 2014, when they ended their
> relationship following an argument.  Thereafter, Victim began living with a
> friend, Chasidey Calhoun, at Calhoun's home.  On July 20, 2014, Victim,
> Calhoun, and two acquaintances, Allen Norwood III and Brittany Hayes, were out
> on a drive when Calhoun received a phone call from her fifteen-year-old
> daughter, A.R., who was at Calhoun's house with her siblings and other children.
> A.R. relayed that a group of individuals, including Defendant's mother, was
> outside the house yelling for Victim to come out to fight. Calhoun told the group
> in the car that they should drive to her home, and she called two of her cousins,
> asking them to meet at the house.  Norwood's father, Allen Norwood, Jr., also
> received a call and was asked to go to the house to check on the children.  Victim,
> Calhoun, Norwood, Hayes, and Calhoun's cousins arrived at the home to find no
> one outside, so they entered the house and walked to the kitchen.  Five minutes
> later, they heard a knock on the door, and one of the children went to answer it.
> When the door opened, Calhoun, Victim, and Norwood heard a loud group
> yelling for Victim to come outside.  Nearly everyone in the house ran toward the
> door and onto the porch where they encountered a group of about ten people,
> including Defendant's mother and brother.  Defendant, in turn, was running
> toward the house from the street.  No fewer than three individuals in Defendant's
> group, including Defendant and Defendant's brother, carried a firearm.  Just as
> Norwood's father arrived at the house, an individual in Defendant's group told the
> others to "hit" Victim, at which point those carrying firearms, including
> Defendant and Defendant's brother, began to fire.  Victim was shot in her leg and
> one of Victim's cousins was shot in her side; Calhoun attempted to run from the
> house and was shot in her foot and back.  During the commotion, A.R. and

1

Norwood helped Victim retreat into the house, where they took her to a bedroom and placed her on the floor.  Defendant's group continued to fire shots, and as A.R. attempted to keep Victim calm, Victim told A.R. that she feared that she would die and that Defendant was the individual who shot her.  Approximately four minutes later, the gunshots stopped, and the paramedics were called.  Calhoun, Victim's cousin, and Victim received medical attention, but while Calhoun and Victim's cousin survived, Victim died.  An autopsy revealed that Victim suffered a gunshot wound to the side of her left thigh that severed a major artery before the bullet traveled through her body and exited on the right side of her hip.  Thereafter, Detective Tom Walsh of the St. Louis City Police Department interviewed both Norwood and Norwood's father about the incident, and both told him that Defendant was present at and participated in the shooting of Victim and her cohort.

Doc. [7-6] at 2-3.

Petitioner was convicted by a jury of one count of first-degree murder, two counts of first-degree assault, two counts of unlawful use of a weapon, one count of endangering the life of a child, and six counts of armed criminal action.  *Id*. at 2.  He was sentenced to life without the possibility of parole for first-degree murder; five terms of life with the possibility of parole for the assault and armed criminal action counts; four terms of 15 years for unlawful use of a weapon; and two seven-year terms of imprisonment for endangering the life of a child and unlawful use of weapon.  *Id*.  His convictions and sentences were affirmed on direct appeal.  Doc. [7-5].  Petitioner then filed a pro se Rule 29.15 motion for post-conviction relief, after which counsel was appointed for his state court post-conviction proceedings.  Doc. [7-8].  Petitioner filed a timely amended Rule 29.15 motion seeking relief on the ground that his trial counsel was ineffective in failing to investigate and call Phyllis Perkins, his aunt, and Jessica Phillips, his cousin, as witnesses during trial.  *Id*.  The motion court denied the amended petition, and the Missouri Court of Appeals affirmed the motion court's decision after an evidentiary hearing.  *Id.*

Petitioner then filed a habeas petition asserting seven claims for relief:  (1) trial counsel was ineffective in failing to investigate and call Phyllis Perkins and Jessica Phillips as witnesses at trial; (2) the trial court erred in failing to exclude the testimony of A.R., a minor witness to the shooting; (3) the trial court erred in failing to accept his *Batson*[1] challenge when the State struck a Black juror; (4) the trial court violated his rights under the Confrontation Clause by allowing

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 (1986).

A.R. to be questioned while blocked from his view; (5) his post-conviction counsel was ineffective by failing to bring a claim alleging the evidence was insufficient to convict him; (6) his post-conviction counsel was ineffective in failing to bring a claim alleging that his trial counsel was ineffective in failing to depose and interview A.R. prior to trial and in failing to effectively impeach A.R.; and (7) his post-conviction counsel was ineffective in failing to bring a claim regarding the alleged violation of the Confrontation Clause.

LEGAL STANDARD

A federal judge may issue a writ of habeas corpus freeing a state prisoner if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The judge must not issue a writ, however, if an adequate and independent state law ground justified the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

"Federal habeas review exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).  Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act (AEDPA)] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254).  Under AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the

state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (petitioner can rebut by clear and convincing evidence presumption that state court factual findings are correct).

DISCUSSION

I.      Ground 1: Petitioner's Claim for Ineffective Assistance of Trial Counsel

In Ground 1, Petitioner contends that his trial counsel was ineffective in failing to interview and call as witnesses his aunt, Phyllis Perkins, and his cousin, Jessica Perkins. Petitioner brought this claim in his post-conviction Rule 29.15 motion, the motion court denied his claim, and that decision was upheld by the Missouri Court of Appeals. As set forth below, the Court determines that the Missouri Court of Appeals' decision was a reasonable application of the federal standard under *Strickland* and is entitled to deference by this Court.

The Sixth Amendment guarantees a criminal defendant effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden to overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). Showing prejudice requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). In the habeas context, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the

first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Williams*, 695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Id.* at 832 (internal quotation marks omitted).

Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). Such a decision must be viewed from the perspective of counsel at the time the decision was made. *U.S. v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001).

At the evidentiary hearing on Petitioner's Rule 29.15 motion, his trial counsel testified that Petitioner's family had a theory of the shooting that differed from her own. *See* Doc. [7-12] at 4-5. Trial counsel testified that her theory of the case was that Petitioner's brother and cousin were the shooters and that Petitioner was present but did not aid or encourage them to fire a weapon. *Id.* at 4. Meanwhile, Petitioner's family wanted counsel to pursue a defense theory that the victim was actually shot by her friend, Chasidey Calhoun. *Id.* at 5. Trial counsel testified that Petitioner mentioned his aunt, Phyllis Perkins, as a potential witness for this theory. *Id.* She relayed that while Petitioner did not have contact information for Ms. Perkins, she was able to speak to Ms. Perkins's daughter, who told counsel that Ms. Perkins would testify that Calhoun shot the victim. *Id.* Trial counsel explained that she chose not to further investigate Ms. Perkins as a witness because she did not find the Calhoun shooter theory to be a "credible stance," as it was not corroborated by the physical evidence. *Id.* Ms. Perkins also testified at the Rule 29.15 hearing, stating that she witnessed the shooting and saw that Petitioner did not have a gun, and would have been willing to testify to that had she been asked. *Id.* The Missouri Court of Appeals found trial counsel's decision not to pursue Ms. Perkins as a witness reasonable, stating:

> Because trial counsel believed the family's theory was not supported by the physical evidence, she concluded that Ms. Perkins's testimony would not be helpful, and decided to not call her as a matter of trial strategy.  The decision not to call a witness is presumed to be trial strategy unless clearly shown otherwise and, as such, is virtually unchallengeable.  [Petitioner] failed to meet his burden of showing that trial counsel's decision to not call Ms. Perkins constituted ineffective assistance of counsel.  Additionally, Ms. Perkins's testimony would have been cumulative.  LaQuita Whalen testified at trial that she did not see [Petitioner] shooting a weapon.  Chasidey Calhoun, a friend of the victim and who was also shot in the attack, testified at trial that [Petitioner] had nothing in his hands and that she never saw him with a gun.  The testimony of Ms. Whalen and Ms. Calhoun was similar to the proposed testimony of Ms. Perkins.  The failure to present cumulative evidence does not constitute ineffective assistance of counsel.

Doc. [7-12] at 6 (internal citations and quotation marks omitted).

As to Jessica Phillips, trial counsel testified at the Rule 29.15 hearing that she did not recall Petitioner ever informing her of a potential witness by that name.  *Id*. at 7.  Petitioner testified that, while he did not know his cousin's last name at the time of trial, he told his counsel that she should "call Jessica up, she will be my witness."  *Id*.  Jessica Phillips testified at the hearing that Petitioner was in a group of people behind her during the shooting, and that the one time she looked at him she did not see a gun.  *Id*. at 8.  The Missouri Court of Appeals noted that her testimony "would not have established that [Petitioner] did not, at any time, have a gun" and that, "to the extent Ms. Phillips's testimony could have established [he] did not have a gun, it would have been cumulative to the testimony of LaQuita Whalen and Chasidey Calhoun."  *Id*. at 8-9.  The court concluded that Petitioner had not shown that Phillips's testimony would have provided a viable defense, nor that it "would have created a reasonable probability of a different outcome at trial," and therefore, trial counsel's failure to call Phillips as a witness did not constitute ineffective assistance.  *Id*. at 9.

On review of the record, the Missouri Court of Appeals did not unreasonably apply *Strickland* to Petitioner's ineffective assistance claim based on counsel's failure to call Ms. Perkins or Ms. Phillips, and its decision was not an "unreasonable determination of the facts in light of the evidence presented in state court."  *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010); 28 U.S.C. § 2254(d).  Therefore, the Court denies habeas relief on Ground 1.

6

## II.     __Grounds 2 and 4:  Testimony of A.R.__

Grounds 2 and 4 both concern the testimony of A.R., the child witness in the case. Petitioner claims in Ground 2 that the trial court erred by failing to exclude A.R.'s testimony because his attorney was not allowed to depose her.  In Ground 4, he argues that the trial court violated his rights under the Confrontation Clause by allowing A.R. to testify while blocked from his view.  The Missouri Court of Appeals rejected both grounds for relief on direct appeal.

In Ground 2, Petitioner alleges that the state court violated Missouri discovery and evidentiary rules by letting A.R. testify at trial even though his attorney was not allowed to interview or depose her until the eve of trial.  First, Petitioner mischaracterizes the record. Neither the state nor Petitioner's counsel were able to speak to A.R. until just prior to trial because she had spent the previous several months actively evading the state's efforts to locate her.  *See* Doc. [7-4] at 11-12.  As the Missouri Court of Appeals explained:

> Here, the State disclosed to Defendant's counsel that it intended to call A.R. at trial, but it initially did not provide her address.  Throughout discovery, the State maintained that this was because it did not have A.R.'s address and it was having difficulty locating her.  In February 2016, the State did provide an address where it thought A.R. might be found, but investigation by Defendant's counsel revealed that the residence was abandoned.  On September 8, 2016, however, four days before trial, the State located A.R. while it was searching for another witness, and it immediately disclosed this information to Defendant along with the address where she was found.  Nevertheless, Defendant's counsel sought to exclude A.R., arguing to the trial court that it did not have the opportunity to depose A.R. and that the late disclosure of her address was too close to trial to appropriately prepare against her testimony.  The State responded, however, that it had been "banging on . . . doors, chasing down any lead . . . as far as potential places that [she] may be," but that it could provide no valid address sooner simply because A.R. was being "uncooperative" and "actively avoiding" the State.  Believing the State, the trial court found that the late disclosure of A.R.'s address was not due to intentional delay, but rather, was the "result of the difficulty of finding" her, and it determined, therefore, that no discovery violation occurred.  The trial court provided that since A.R. made "herself invisible to both sides," both the State and Defendant were "equally harmed," and it refused to exclude A.R.  On September 12, 2016, A.R. appeared at court during a recess in the course of voir dire, and the trial court permitted both the State and Defendant's counsel to speak with A.R. When the parties finished interviewing her, the trial court asked "Is there anything either parties [sic] want on the record," and both responded "No."  Thus, they completed voir dire and commenced with trial, at which A.R. was permitted to testify.

Doc. [7-6] at 11-12.

Ground 2 alleges an error under state law.  Under 28 U.S.C. § 2254(a), a district court may entertain a petition for writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  *See also Gee v. Groose,* 110 F.3d 1346, 1351-52 (8th Cir. 1997).  "It is not the province of a federal habeas court to reexamine state court determinations on state law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  The admissibility of evidence at trial is ordinarily a matter of state law and "will not form the basis for federal habeas relief."  *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir. 1984), *cert. denied*, 469 U.S. 919 (1984)); *see also Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000) ("Rulings on the evidence in state trials rarely rise to the level of a federal constitutional violation.").

"A federal court may, however, grant habeas relief when a state court's evidentiary ruling . . . is so prejudicial that it amounts to a denial of due process."  *Turner*, 845 F.2d at 169. Reversal of a state court evidentiary ruling is appropriate only if "the petitioner . . . shows that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'"  *Anderson*, 44 F.3d at 679 (internal citation omitted).  To carry that burden, the petitioner must show "that absent the alleged impropriety the verdict probably would have been different."  *Id.*  In making that determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration."  *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986).  "No due process violation [exists], even if the evidence was erroneously admitted, if other evidence of guilt is so overwhelming that the error is harmless."  *Wedemann v. Solem*, 826 F.2d 766, 767 (8th Cir. 1987) (citing *Hobbs v. Lockhart*, 791 F.2d 125, 127-28 (8th Cir. 1986)).

Here, even if this Court were to agree with Petitioner that the state evidentiary ruling was erroneous—a question on which it does not take a position—it could not find that the error amounted to a deprivation of constitutional due process.  Petitioner has not shown that allowing A.R. to testify rendered his trial fundamentally unfair, especially considering the other evidence against him.  Therefore, the allegedly erroneous state evidentiary ruling is not cognizable in these proceedings, and Ground 2 fails.

In Ground 4, Petitioner alleges that his rights under the Confrontation Clause were violated because the trial court allowed A.R. to testify while shielded from his view.  During

trial, the State sought to call A.R. as a witness to describe victim's statement to A.R. disclosing that it was Petitioner who shot her.  A.R. initially refused to testify, explaining that she was afraid of being in the courtroom with Petitioner and did not feel safe talking in front of him because she had been followed and threatened by his family.  Doc. [7-6] at 7.  After her refusal to testify, counsel for both sides retreated to chambers for two hours to discuss options that could make A.R. comfortable enough to testify.  *Id*.  Ultimately, it was decided that A.R. would testify in the courtroom in the presence of Petitioner and the jury, but with Petitioner's and A.R.'s views of each other obstructed by a barrier consisting of a blanket draped over a television stand.  *Id*. A.R. agreed to testify under those circumstances, and was sworn in.  *Id*.  Petitioner objected, arguing that blocking his view of A.R. violated his Confrontation Clause rights.  The trial court allowed her to testify with the barrier in place, noting that A.R. had refused to testify due to her "sincere fear," and stating that "while there is a desire to have the defendant confront his witnesses, it should not be to the detriment of justice and the ability to have the witness testify honestly and tell the whole truth.  The Court believes that . . . this setup allows truthful testimony and . . . [allows] the defendant to hear it and share any of his thoughts with the defense attorney and therefore confront the witness without causing any unnecessary stress and additional trauma to the witness." *Id*.  A.R. proceeded to testify that the victim told her Petitioner had shot the victim, and A.R. was then cross-examined by Petitioner's counsel.  *Id*.

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The central concern of the Confrontation Clause is not to guarantee a face-to-face encounter between the accused and the witnesses against him, but rather, "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845 (1990).  "[W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Id.* at 857.  The absence "of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding" is outweighed where "other elements of

confrontation—oath, cross-examination, and observation of the witness's demeanor—adequately ensure that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Id*. at 851.

The Missouri Court of Appeals considered Petitioner's claim and found that his rights under *Craig*, 497 U.S. at 846, were not violated by the use of the barrier, stating:

> On appeal, Defendant argues that since the barrier prevented him from viewing A.R. "face-to-face," while she testified, his right to confront her was violated. However, Defendant's contention is without merit because the arrangement secured the presentation of A.R.'s testimony without hindering Defendant's ability to subject A.R. to rigorous adversarial testing. Here, the trial court explicitly found that A.R., a minor at the time of trial, was "traumatized" and expressed a "sincere" fear of testifying in front of Defendant. In order to secure A.R.'s testimony while alleviating her fears, the trial court determined that use of the barrier would minimize any trauma she might otherwise experience without it. The trial court anticipated correctly, as only after this arrangement was put in place did A.R. agree to testify. In turn, while the barrier obscured Defendant's view of A.R., it did not erode the "elements of confrontation— physical presence, oath, cross-examination, and observation . . . by the trier of fact." Craig, 497 U.S. at 846. A.R. was in the courtroom and under oath when she testified, thus impressing her with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury. Further, A.R. was forced to submit to cross-examination, and Defendant's counsel was not limited in her ability to question A.R. Finally, while A.R. was not in view of Defendant, the jury could still observe the demeanor of A.R. in making her statement, thus aiding the jury in assessing her credibility. Since these elements of confrontation were maintained, A.R. was subjected to rigorous adversarial testing despite the lack of a face-to-face encounter, and Defendant's right to confrontation was not violated.

Doc. [7-6] at 8 (some internal citations and quotation marks removed).

On review of the record, the Court agrees that the procedure used at trial was consistent with the Supreme Court's decision in *Craig*. Avoiding face-to-face confrontation was necessary to encourage A.R. to testify, but A.R. was present in the courtroom, testified under oath, and was subject to cross-examination, all while fully visible to the trier of fact. *Id*. at 8-9. The state court's decision allowing A.R. to testify behind a barrier was not contrary to Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence. Additionally, even if the state court had erred in allowing A.R. to testify in this manner, any such error would have been harmless. Petitioner was charged and tried under a theory of accomplice liability; he would therefore have faced criminal liability for the conduct of

others who shot at the victim.  Doc. [7-6] at 9.  There was overwhelming evidence at trial from multiple witnesses that both Petitioner and his brother were present at the shooting, that both were armed, and that both shot at the victim.  *Id*.  That evidence was sufficient to support a finding that Petitioner aided his brother in the commission of the offense under a theory of accomplice liability.  Accordingly, the Court denies habeas relief on Ground 4.

### III.    **Ground 3:  *Batson* Challenge**

In Ground 3, Petitioner asserts that the trial court erred in overruling his *Batson* challenge to the prosecutor's use of a peremptory strike against a prospective juror, alleging that venireperson Calvin—who, like Petitioner, is Black—was stricken because of her race.  During voir dire in Petitioner's trial, Calvin stated that she was a certified nursing assistant and worked as a caregiver.  Doc. [7-6] at 13.  The State used one of its peremptory strikes to remove Calvin, and Petitioner raised a *Batson* challenge, noting that both Calvin and Petitioner were Black.  *Id*. The prosecutor responded that she was stricken due to her profession, because he had had difficult experiences in the past with other jurors in that profession, and he found that she had a "bit of an attitude" when he questioned her.  *Id*.  Petitioner's counsel argued that those reasons were pretextual because Swiney, a white venireperson who was a pediatric nurse practitioner, was not stricken even though their professions were similar.  *Id*.; *see also* Doc. [7-1] at 445.  The trial court disagreed, stating that a nurse practitioner is "not even in the same league as a certified nurse assistant," and determined that the prosecutor had given adequate race-neutral reasons for striking venireperson Calvin.  *Id*.; *see also* Doc. [7-1] at 514.

"*Batson* established that 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'"  *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting *Batson*, 476 U.S. at 89).  The Supreme Court has established a three-part test to determine whether a peremptory strike violates the Constitution.  *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam)).  First, "the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race."  *Id*.  Second, if the defendant makes such a showing, then the State must offer a racially neutral explanation for the challenges.  *Id*.  The explanation "need not justify a challenge for cause, nor be persuasive, or even plausible, so long as the reason is not inherently discriminatory."  *Id*.  Third, the trial court "must then determine whether the defendant has carried his burden of proving purposeful discrimination,"

which "involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' "  *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

In his direct appeal, Petitioner claimed that the State had failed, in the second step of the *Batson* procedure, to provide a race-neutral reason for striking Calvin.  Doc. [7-6] at 15-16.  He also argued that the trial court failed to weigh the surrounding circumstances in the third step, when Petitioner's counsel attempted to establish that the State's proffered reason was pretextual. *Id*.  The Missouri Court of Appeals denied the claim, stating:

> Defendant's contention is without merit because the State provided an appropriate race-neutral reason for striking Calvin, and Defendant failed to meet his burden in establishing that that reason was pretextual.  The employment of a venireperson is a valid race-neutral reason to exercise a strike, and the State is not required in the second step of Missouri's *Batson* procedure to provide an explanation that relates to the case to be tried or that is legitimate.  Rather, legitimacy, relation to the case, persuasiveness, and plausibility of the State's reasons to exercise a strike are concerns left for the third step of the procedure. Here, since the State claimed to have struck Calvin on the basis of her attitude and employment and its experience with past jurors who worked in a similar profession, the State provided a facially-neutral reason to strike her.  The burden became Defendant's, in the third step of the procedure, to show why the State's proffered reason was pretextual, and he failed in that regard.  Defendant attempted to rebut the State's proffered reason by noting that the professions of Calvin and Swiney rendered them similarly situated but that only Calvin, who is African-American, was struck.  However, contrary to the Defendant's claim that the trial court failed to engage in careful weighing of the surrounding circumstances, the trial court noted that nurse assistants and nurse practitioners are "not even in the same league" given the differences in qualification and experience between the professions. The trial court, therefore, determined that Calvin and Swiney were not so similarly situated as to establish that the State's strike of Calvin but not Swiney was pretextual and denied Defendant's challenge.  We find no clear error.  Based upon the trial court's recognition of the differences in qualification and experience between certified nursing assistants and nurse practitioners, the court could reasonably have found that Calvin and Swiney simply were not sufficiently similarly-situated to demonstrate that the State's strike was racially motivated. Defendant, therefore, failed to demonstrate pretext, and the trial court did not err in overruling Defendant's *Batson* challenge.

Doc. [7-6] at 16-17 (internal citations removed).

The Court concludes that the state trial court's decision on this matter did not involve an unreasonable application of *Batson*.  The trial court followed proper procedures, asking the prosecutor to present a race-neutral reason for the challenged strike.  Doc. [7-1] at 513-15.

When Petitioner offered an argument for rejecting the prosecutor's reason, the court addressed the argument and made factual determinations. *Id.* Petitioner fails to overcome with clear and convincing evidence the presumption of correctness afforded the trial court's *Batson* findings. *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (State trial court *Batson* findings are "highly fact-intensive," and federal habeas courts "give deference" to them.).

The Missouri Court of Appeals also reasonably determined that there was good reason to distinguish between the Black venireperson who was struck and the white venireperson who was not. The decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 379 (2000). Accordingly, Ground 3 is denied. *See Stenhouse v. Hobbs*, 631 F.3d 888, 892-93 (8th Cir. 2011) (state court reasonably rejected a *Batson* claim where the "similarly situated" venirepersons identified by the defense were not actually similarly situated); *Cole v. Roper*, 623 F.3d 1183, 1188 (8th Cir. 2010) (same).

## IV.      Grounds 5, 6, and 7:  Ineffective Assistance of Post-Conviction Counsel

In Grounds 5, 6, and 7, Petitioner argues that his post-conviction counsel was ineffective in various ways. Such a claim is not cognizable in a habeas proceeding. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Williams v. Sachse*, 2022 WL 4534452, at *18 (E.D. Mo. Sept. 28, 2022) (same). Thus, Grounds 5, 6, and 7 are denied.

### CONCLUSION

Petitioner is not entitled to federal habeas relief, and he has not made a substantial showing of the denial of a constitutional right, as required for a certificate of appealability to issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Thus, the Court will not issue a certificate of appealability as to any claims raised in the petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED**.

13

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that the Court will **NOT ISSUE** a certificate of appealability as to any claim raised in the amended petition.

A separate judgment accompanies this Memorandum and Order.

Dated this 18th day of March, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE